# EXHIBIT A

A6037
Q0029

1  Carney R. Shegerian, Esq., State Bar No. 150461
   CShegerian@Shegerianlaw.com
2  Anthony Nguyen, Esq., State Bar No. 259154
   ANguyen@Shegerianlaw.com
3  SHEGERIAN & ASSOCIATES, INC.
   225 Santa Monica Boulevard, Suite 700
4  Santa Monica, California 90401
   Telephone Number:  (310) 860-0770
5  Facsimile Number:   (310) 860-0771

6  Attorneys for Plaintiff,
   VICTOR GARCIA

**FILED**
Superior Court Of California
County Of Los Angeles

FEB 14 2017

Sherri R. Carter, Executive Officer/Clerk
By _Cristina Grijalva_, Deputy
        Cristina Grijalva

D74  Teresa Sanchez-Gordon

7
8          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
9        **FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT**
10

11  VICTOR GARCIA,                          ) Case No.:    **BC 6 5 0 2 7 3**
                                            )
12         Plaintiff,                       ) **PLAINTIFF VICTOR GARCIA'S**
                                            ) **COMPLAINT FOR DAMAGES FOR:**
13  vs.                                     )
                                            ) **(1) DISCRIMINATION IN VIOLATION**
14  RITE AID, a corporation, THRIFTY        )     **OF FEHA;**
    PAY LESS INC., a corporation, JOE       )
15  ROCHA, an individual, JILBERT           ) **(2) HARASSMENT IN VIOLATION OF**
    SHAHDARYAN, an individual,              )     **FEHA;**
16  NICHOLE HUBERA, and DOES 1 to           )
    100, inclusive,                         ) **(3) RETALIATION IN VIOLATION OF**
17                                          )     **FEHA;**
         Defendants.                        )
18                                          ) **(4) FAILURE TO PROVIDE**
                                            )     **REASONABLE**
19                                          )     **ACCOMMODATION IN**
                                            )     **VIOLATION OF FEHA;**
20                                          )
                                            ) **(5) FAILURE TO ENGAGE IN THE**
21                                          )     **INTERACTIVE PROCESS IN**
                                            )     **VIOLATION OF FEHA;**
22                                          )
                                            ) **(6) FAILURE TO PREVENT**
23                                          )     **DISCRIMINATION,**
                                            )     **HARASSMENT, AND**
24                                          )     **RETALIATION IN VIOLATION OF**
                                            )     **FEHA;**
25                                          )
                                            ) **(7) VIOLATION OF LABOR CODE**
26                                          )     **§ 1102.5;**
                                            )
27                                          ) **(8) WRONGFUL TERMINATION OF**
                                            )     **EMPLOYMENT IN VIOLATION**
28                                          )     **OF PUBLIC POLICY;**

RECEIPT #: CCH195720084
DATE PAID: 02/14/17
PAYMENT RECEIVED:
CHECK:
CASH:
CHANGE:
CARD:
$435.00
$0.00
$0.00
$0.00
$0.00
15:21 PM
310

CIT/CASE:
LEA/DEFR#:
BC650273

---

(9) **BREACH OF EXPRESS ORAL CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

(10) **BREACH OF IMPLIED-IN-FACT CONTRACT NOT TO TERMINATE EMPLOYMENT WITHOUT GOOD CAUSE;**

(11) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**

(12) **FAILURE TO PROVIDE MEAL BREAKS;**

(13) **FAILURE TO PROVIDE REST BREAKS;**

(14) **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**DEMAND FOR JURY TRIAL**

Plaintiff, Victor Garcia, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Victor Garcia ("plaintiff" or "Garcia"), whose employment with defendants Rite Aid Corporation and Thrifty Payless Incorporated (hereinafter collectively referred to as "entity defendants") was wrongfully terminated. Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

PLAINTIFF'S COMPLAINT FOR DAMAGES

## PARTIES

1. *Plaintiff:*  Plaintiff Garcia is, and at all times mentioned in this Complaint was, a resident of the County of Los Angeles, California.

2. *Defendants:*  Defendant Rite Aid Corporation was, at all times mentioned in this Complaint, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Defendant's place of business, where the following causes of action took place, was and is in the County of Los Angeles, at the Rite Aid store at 4633 Santa Monica Boulevard, Los Angeles, California 90029.

3. Defendant Thrifty Payless Incorporated was, at all times mentioned in this Complaint, authorized to operate by the State of California and the United States government and authorized and qualified to do business in the County of Los Angeles. Defendant's place of business, where the following causes of action took place, was and is in the County of Los Angeles, at the Rite Aid store at 4633 Santa Monica Boulevard, Los Angeles, California 90029.

4. Defendant Joe Rocha ("defendant" or "Rocha") is, and at all times mentioned in this Complaint was, a supervisor with defendants.  Defendant Rocha is, and at all times mentioned in this Complaint was, a resident of Los Angeles County, California.

5. Defendant Jilbert Shahdaryan ("defendant" or "Shahdaryan") is, and at all times mentioned in this Complaint was, a supervisor with defendants.  Defendant Shahdaryan is, and at all times mentioned in this Complaint was, a resident of Los Angeles County, California.

6. Defendant Nichole Hubera ("defendant" or "Hubera") is, and at all times mentioned in this Complaint was, a supervisor with defendants.  Defendant Hubera is, and at all times mentioned in this Complaint was, a resident of Los Angeles County, California.

///

///

7. *Doe defendants:* Defendants Does 1 to 100, inclusive, are sued under fictitious names pursuant to Code of Civil Procedure section 474. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "defendants."

8. *Relationship of defendants:* All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i). All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision, of one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest between or among two or more of the defendants such that any individuality and separateness between or among those defendants has ceased, and defendants are the alter egos of one another. Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist. Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice. All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

9.   Defendants Rite Aid Corporation and Thrifty Payless Incorporated both directly and indirectly employed plaintiff Garcia, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

10.   In addition, defendants Rite Aid Corporation, Thrifty Payless Incorporated, Rocha, Shahdaryan, and Hubera compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

11.   Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## FACTS COMMON TO ALL CAUSES OF ACTION

12.   *Plaintiff's hiring:*  Garcia was hired by Thrifty Payless on or around August 12, 1985, and began working at Thrifty store number 5452, at 7900 Sunset Boulevard, Los Angeles California 90046.  Thrifty is also known as Rite Aid.  During his career, he worked as a stock clerk and cashier.  This was plaintiff's first full time job.

13.   *Plaintiff's job performance:*  Plaintiff was a loyal and hard-working employee during his 31-year tenure with the entity defendants.  All of his co-workers spoke highly of him and admired his work ethic.  While plaintiff had been receiving positive feedback and performance reviews, his work experience quickly began to decline under manager Joe Rocha, in part after he testified on behalf of Robert Leggins in his FEHA suit against Rite Aid.

14.   *Plaintiff's protected status and activity:*

a.   Plaintiff is a 51-year-old Latino male.

b.   Plaintiff suffered from disabilities (depressive disorder, allergic rhinitis, hypertension, and chronic leg, elbow, back, and shoulder pain), of which he informed defendant Rite Aid.

c.   Plaintiff's participation in the lawsuit of his former manager (Leggins) against Rite Aid for multiple claims, including claims of discrimination, harassment, and retaliation brought pursuant to California's Fair Employment Housing Act, included

giving testimony on his behalf.

15. *Defendants' adverse employment actions and behavior:*

a. In October of 2013, while plaintiff was working in the stock room, he injured his back and shoulder while carrying a four-by-four table down the stairs with assistant manager Jerell Smith ("Smith"). Smith's hands slipped while he was walking backward, and he let go of the table. Plaintiff was left holding the table and fell down the stairs alongside the table. Smith reported my injury to store manager Luisa Gallegos, who asked him to fill out an incident report. Smith did not do as he was asked. No injury report was made, and plaintiff did not receive medical attention.

b. Also in 2013, a supervisor frequently called plaintiff "Grandpa." In 2014 and 2015, plaintiff's assistant manager told him that, because he does not have any grey hair, he must dye it. This contributed to the overall hostile work environment that plaintiff was subjected to while working with defendants.

c. In October of 2014, Jilbert Shahdaryan ("Shahdaryan"), district manager, and loss prevention manager Chris Wade called plaintiff on the phone to question him about his alleged search of a customer's bag that Shahdaryan claimed to have watched in a store video recording, despite the plaintiff's attestation that he had not done so. The following day, Shahdaryan and Wade showed up at the store (Rite Aid #5439), asked plaintiff not to take the incident any further, and cleared him of the accusation because supervisor Daniel Giron had acknowledged that he was the one who searched had search the customer's bag.

d. On October 23, 2014, plaintiff went to see his doctor at Kaiser because of the stress caused by his being wrongly accused of searching a customer's bag. He was diagnosed with depressive disorder and allergic rhinitis and was prescribed medicine.

e. On December 28, 2014, plaintiff was involved in an automobile accident after working a graveyard shift. He was on his way home on the freeway when his car was rear-ended by another vehicle. He was diagnosed with a strain of his lumbar paraspinal muscle and placed on medical leave by his physician from December 30,

2014 through March 30, 2015.  When plaintiff returned to work, Joe Rocha had replaced Luisa Gallegos as his store manager.

f.  In or around May and April 2015, Plaintiff's supervisor would often tell the Plaintiff that he looked tired, which must be because he was very old.

16.  *Plaintiff's participation in the FEHA lawsuit of another Rite Aid employee:*

a.  On June 5, 2013, Leggins, plaintiff's former manager at Rite Aid, filed a lawsuit against Rite Aid and several individual defendants for multiple claims, including discrimination, harassment, and retaliation under FEHA.  These individual defendants included Shahdaryan, district manager of the store where both plaintiff and Leggins worked.

b.  After years of contentious litigation, the case was called to trial on July 6, 2015.  On July 16, 2015, the jury returned a plaintiff's verdict in the amount of $3,769,128.00.  On July 17, 2015, the jury awarded punitive damages in the amount of $5,000,000.00. There was much talk in the plaintiff's store about the verdict.

c.  On July 8, 2015, plaintiff was summoned to court at 111 North Hill Street, Los Angeles, California 90012, where he was called to testify on behalf of Leggins. Plaintiff's testimony included the facts that:  (1) Leggins was a hard-working employee and a good manager, (2) plaintiff had advised Leggins to document actions against him by management, and (3) plaintiff was not supposed to be in court that day, testifying.

d.  Upon plaintiff's return to work after his court appearance, his current manager, Joe Rocha, aggressively approached him and immediately began to ask plaintiff about the trial and his testimony.  Plaintiff felt very uncomfortable straightaway because Rocha's hostile and accusatory demeanor and tone made plaintiff feel as if he had done something wrong.

e.  In an effort to stop Rocha's line of questioning, plaintiff responded that he did not want to go to court in the first place and did so only because he was ordered to do so. This interaction caused plaintiff much anxiety and stress.

///

f. Almost instantaneously, plaintiff began to suffer the repercussions of his participation in the Leggins lawsuit. Rocha saddled plaintiff with a heavy work load that far exceeded what he had before and modified his schedule in order to harass him and make an example of him. Prior to testifying for Leggins, plaintiff had Sundays off and early shift schedules during the week. However, after he testified, Rocha scheduled plaintiff for two graveyard shifts a week, meaning that he had to come back to work on the same day. Rocha also changed plaintiff's schedule so that he had to work on Sundays, meaning that he had to work every weekend, all weekend—*i.e.,* Friday, Saturday, and Sunday. These actions were taken against him to cause him further stress in the hope that he would quit his job and to punish him for having provided testimony at the Leggins trial.

g. Rocha would also frequently force the Plaintiff to return to work for his next shift less than 10-hours after the end of his previous shift unnecessarily in violation of his union contract. According to the contract, if this could not be avoided, the employee was to be paid overtime for all time worked within that 10-hour period. Rocha never paid plaintiff overtime when called back early.

h. Rocha also assigned all of the seasonal aisle work to plaintiff. He then added shift supervisor Jason Alcala ("Alcala") to work alongside plaintiff. Plaintiff and Alcala were responsible for completing the assistant manager's work, which was outside their normal job duties. As such, Alcala often complained that they were being assigned too much work. Plaintiff is informed and believes that many of Rocha's actions were performed at the direction of Shahdaryan.

i. After plaintiff testified on behalf of Leggins, Rocha would also monitor the plaintiff while he was working via the store video cameras. Rocha never did this prior to plaintiff's involvement in Leggins case, and did not do this to other employees.

j. Likewise, Rocha also stopped speaking to the plaintiff, or exchanging pleasantries such as good morning and hello, other than the bare minimum necessary to ensure that the plaintiff had completed his work. Prior his giving testimony, Rocha and

the plaintiff would often communicate about what was going on in their lives, and would always say hello when they passed each other in the store. Moreover, Rocha did not treat other store employees this way.

k.  In October of 2015, plaintiff hurt his left leg (calf muscle) when he ran into a merchandise tote filled with liquor while carrying a heavy box of liquor.  As Ileana Palafox ("Palafox") entered the stock room, she noticed that plaintiff was hurt.  Plaintiff asked Palafox to get Rocha and ask him to come back into the stock room.  When Rocha arrived, he told plaintiff to take a seat for 20 minutes and shake it off.  Although plaintiff told Rocha that he was in pain, Rocha told plaintiff he could not go to his own doctor because he had to see the company doctor first.  However, Rocha never sent plaintiff to see the company doctor and did not even make an employee injury report, as is required by company policy.  About four days later, the pain plaintiff was suffering, along with the swelling he was experiencing, compelled him seek help from Sheila Solymani, a pharmacist in the store.  She recommended pain medicine, which plaintiff purchased and consumed.  Plaintiff experienced severe pain for about four more days.

l.  At plaintiff's store, shoplifting incidents occurred almost every day.  Three or four times a week, confrontations occurred between shoplifters and employees.  However, there was no security guard consistently employed at his store.  At most, a security guard would come in a few times per week.  However, he or she would often leave to provide security to a different store.  The presence of security guards was contingent on the store's budget.  Thus, if a store did not meet its quota or were under budget, employees were left defenseless.

m.  While loss prevention was present only a few times per week, they do not provide security to employees, and their presence was also limited by budgetary constraints.

n.  On December 9, 2015, Alcala, plaintiff's supervisor, asked him to follow, and thereafter attempt to stop, a presumed shoplifter.  After he was confronted, the presumed shoplifter followed plaintiff back into the store, became physically aggressive,

and assaulted plaintiff while his co-workers watched. As part of this assault, the presumed shoplifter struck plaintiff in the face with full force. At no time during this incident was plaintiff the aggressor; he took action only to defend himself by covering his face and body with his arms.

o. The police came and took a report. Thereafter, plaintiff was sent to Citizens Medical Group for treatment and was diagnosed with a contusion on the cheek.

p. Not long thereafter, Sally Galvan, a loss prevention agent, showed Palafox and Rocha video surveillance that captured part of the incident. After watching the video, Rocha asked Alcala if plaintiff had fought back during the incident. Alcala confirmed that he had not.

q. Shortly thereafter, other employees began to gossip about the video and kept asking plaintiff why he did not fight back.

r. On December 15, 2015, plaintiff sought medical care to assist him with the severe anxiety he was suffering from because of the shoplifting incident, the investigation of the shoplifting incident, and accusations made against him. He was placed on medical leave for two days. Plaintiff is informed and believes that the Defendants used the shoplifting incident as an opportunity to take further action against the Plaintiff for his having testified on behalf of Leggins.

s. Approximately two to three weeks after the incident, two employees from loss prevention, including defendant Hubera, came to plaintiff's store at approximately 5:00 a.m. and interrogated him regarding the above described incident during the graveyard shift. Plaintiff explained that Alcala, his supervisor, had ordered him to follow the shoplifter. At this point, plaintiff stopped the interrogation and asked to have his union representative present, as was his right under the collective bargaining agreement.

t. Around two days later, two union representatives, including Hubera, met with plaintiff and loss prevention employees for a continuation of the previous interrogation. They asked to review the video and asked whether there were video of

Alcala directing plaintiff to follow the presumed shoplifter or plaintiff assisting Alcala in stopping him. Loss prevention responded that they did not have a camera on that isle. Plaintiff was again asked to write a statement, but, on the advice of his representatives, chose not to. The union representative also asked Hubera if she was going to interview Alcala, to which Hubera responded that she had no obligation to do so.

u. In or around early 2016, district manager Shahdaryan went into the back of the store. When he saw plaintiff taking a break in the break room, Shahdaryan stated: "He is taking a break because he worked today." This comment, insinuating that plaintiff was lazy and not a hard worker, made plaintiff uncomfortable.

v. On March 6, 2016, plaintiff sought further medical care to help him to deal with the continued stress he was suffering as a result of the shoplifting incident and the investigation thereof. A physician placed plaintiff on medical leave for five days.

w. In 2015 and 2016, the Plaintiff was often asked to perform work when he was not on the clock, during both rest and meal breaks. In fact, he was asked to do so frequently by loss prevention and his store manager (Rocha), which was often approved by the district manager (Shahdaryan), both of whom hold substantial decision making discretion that ultimately determine corporate policy, far above and beyond that of the simple hiring and firing of store employees. In fact, Shahdaryan managed 15 stores in his district, with 15 direct reports, and 300 associates.

x. In 2016, plaintiff called Watson, his union representative, to inform her of such. Watson advised him to call human resources and tell them of what had happened. Plaintiff followed Watson's advice, told human resources that he was being forced to work when he was not on the clock, and explained that he believed this conduct violated his rights.

17. *Defendants' discharges of employees hired by Thrifty prior to its purchase by Rite Aid:* Because of the union contracts that governed at the time of hire, employees who had been hired by Thrifty received better benefits and pay than those individuals hired by Rite Aid. For example, employees hired by Thrifty had better health benefits in

1  terms of coverage, co-pays, and employee contribution; began with more sick and
2  vacation time; received seniority for the purpose of raises at a faster pace; and moved
3  from full-time to part-time employment at a faster pace. In fact, Rite Aid often tried to
4  entice employees covered by the Thrifty union contract to reduce costs.

5  18. Because Rite Aid bought Thrifty 20 years ago—in or around 1996—most of the
6  employees hired by Thrifty and covered by Thrifty union contracts, are 40 or older. On
7  information and belief, Rite Aid targets employees such as plaintiff who are over the age
8  of 40 in an effort to reduce its costs and in furtherance of its bottom line.

9  19. *Defendants' termination of plaintiff's employment:*   On March 20, 2016,
10 plaintiff's employment was summarily terminated without notice upon his arrival at
11 work at 6:30 in the morning. Store manager Rocha told plaintiff that he had to let him
12 go, but that no one had told him what was going on. At the same time, Rocha said that
13 he had told Shahdaryan "they had just lost Robert Leggins case, and it was unlikely that
14 this is not going to be the end of it." As a result of the termination of his employment
15 and the other unlawful actions taken against him, plaintiff has experienced, and been
16 diagnosed with, acute stress, anxiety, and depression. He suffers from these symptoms
17 almost every day, and they greatly affect his quality of life.

18 20. After his termination, defendant's lawyers sent plaintiff a letter insinuating that
19 he was terminated for the shoplifting incident that occurred over three months prior to
20 his termination.

21 21. *Economic damages:*  As a consequence of defendants' conduct, plaintiff has
22 suffered and will suffer harm, including lost past and future income and employment
23 benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties,
24 as well as interest on unpaid wages at the legal rate from and after each payday on which
25 those wages should have been paid, in a sum to be proven at trial.

26 22. *Non-economic damages:*  As a consequence of defendants' conduct, plaintiff
27 has suffered and will suffer psychological and emotional distress, humiliation, and men-
28 tal and physical pain and anguish, in a sum to be proven at trial.

-12-

PLAINTIFF'S COMPLAINT FOR DAMAGES

23. *Punitive damages:* Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a. *Malice:* Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment; retaliating against him for his participation in a lawsuit based partially on FEHA claims, including testifying on behalf of the Plaintiff; reporting wage and hour violations, and taking other adverse job actions against plaintiff because of his race, age, disability, medical leave, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

b. *Oppression:* In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including retaliating against him for his participation in a lawsuit based partially on FEHA claims and testifying on behalf of the Plaintiff and defendants' actions against plaintiff because of his race, age, disability, medical leave, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, abuse of the requirements of accommodation and engaging in the interactive process, and wrongful employment termination.

c. *Fraud:* In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive him of

1 legal rights.

2 24. *Attorneys' fees:* Plaintiff has incurred and continues to incur legal expenses and
3 attorneys' fees.

4 25. *Exhaustion of administrative remedies:* Prior to filing this action, plaintiff ex-
5 hausted his administrative remedies by filing a timely administrative complaint with the
6 Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-
7 sue letter.

8

9 **FIRST CAUSE OF ACTION**

10 **(Violation of FEHA (Government § 12900, *et seq.*)**

11 **(Race, Ancestry, National Origin, Disability**

12 **and/or Age Discrimination)—Against all Entity**

13 **Defendants and Does 1 to 100, Inclusive)**

14 26. The allegations set forth in paragraphs 1 through 25 are re-alleged and incorpo-
15 rated herein by reference.

16 27. Defendants' conduct, as alleged, violated FEHA, Government Code section
17 12900, *et seq.,* and defendants committed unlawful employment practices, including the
18 following bases for liability:

19 a. Taking adverse employment actions against the plaintiff, including dis-
20 charging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or other-
21 wise discriminating against plaintiff, in whole or in part on the basis of plaintiff's race,
22 ancestry, national origin, disability, and/or age in violation of Government Code section
23 12940(a);

24 b. Harassing plaintiff and/or creating a hostile work environment, in whole or
25 in part on the basis of plaintiff's race, ancestry, national origin, disability, and/or age in
26 violation of Government Code section 12940(j);

27 c. Failing to take all reasonable steps to prevent discrimination and harassment
28 based on race, ancestry, national origin, disability, and/or age in violation of Government

Code section 12940(k);

d. Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA, participating in protected activities, and/or opposing defendants' failure to provide such rights, in violation of Government Code section 12940(h).

28. Plaintiff also alleges age discrimination under the theory of disparate impact in that defendants' policies, including discharging long-term employees as a cost-saving measure, had a disproportionate adverse affect on persons age 40 and older, compared to those under the age of 40. Plaintiff also alleges that this business practice was not job related, *i.e.*, is not necessary for running defendants' business. As such, defendants have exhibited a general pattern and practice of discrimination in terminating the employment of employees age 40 and older.

29. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

30. As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

31. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

32. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, and fraudulent manner, entitling plaintiff to punitive damages against defendants.

///

///

///

///

## SECOND CAUSE OF ACTION

### (Violation of FEHA (Government § 12900,
### *et seq.*) (Race, Ancestry, National Origin,
### Disability and/or Age Harassment)—Against
### All Defendants and Does 1 to 100, Inclusive)

33.  The allegations set forth in paragraphs 1 through 32 are re-alleged and incorporated herein by reference.

34.  Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.*, and defendants committed unlawful employment practices, including by the following bases for liability:

    a.  Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's race, ancestry, national origin, age, actual, perceived, and/or history of physical disability, and/or other protected characteristics, in violation of Government Code section 12940(j);

    b.  Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on race, ancestry, national origin, age, actual, perceived, and/or history of physical disability, and/or other protected characteristics, in violation of Government Code section 12940(k).

35.  As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

36.  As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

37.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

38.  Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, fraudulent manner, entitling plaintiff to punitive damages against defendants.

### THIRD CAUSE OF ACTION

**(Violation of FEHA (Government § 12900, *et seq.*)**

**(Retaliation for the Exercise of Rights Guaranteed Under**

**the FEHA, Participating in Protected Activities, and/or**

**Opposing Defendants' Failure to Provide Such Rights)—**

**Against All Entity Defendants and Does 1 to 100, Inclusive)**

39.  The allegations set forth in paragraphs 1 through 38 are re-alleged and incorporated herein by reference.

40.  Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.*, and defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.  Taking adverse employment actions against plaintiff, including discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's race, ancestry, national origin, age, actual, perceived, and/or history of physical disability, and/or other protected characteristics, in violation of Government Code section 12940(a);

b.  Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's race, ancestry, national origin, age, actual, perceived, and/or history of physical disability, and/or other protected characteristics, in violation of Government Code section 12940(j);

c.  Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on race, ancestry, national origin, age, actual, perceived, and/or history of physical disability, and/or other protected characteristics, in violation of Government Code section 12940(k);

PLAINTIFF'S COMPLAINT FOR DAMAGES

d.  Retaliating against plaintiff for seeking to exercise rights guaranteed under FEHA, participating in protected activities (including testifying), and/or opposing defendants' failure to provide such rights, including the right of reasonable accommodation, the right of interactive process, leave rights, and/or the right to be free of discrimination and harassment in violation of Government Code section 12940(h).

41.  As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

42.  As a proximate result of defendants' willful, knowing, and intentional retaliation against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

43.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

44.  Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, fraudulent manner, entitling plaintiff to punitive damages against defendants.

## FOURTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12940(a),

### (i), (m), (n)) (Failure to Provide Reasonable

### Accommodation)—Against All Entity Defendants

### and Does 1 to 100, Inclusive)

45.  The allegations set forth in paragraphs 1 through 44 are re-alleged and incorporated herein by reference.

46.  At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on defendants.  This statute

-18-

requires defendants to provide reasonable accommodations to known disabled employees.

47. Defendants wholly failed to attempt any reasonable accommodation of plaintiff's known disabilities. Defendants also used plaintiff's disabilities and his need to take medical leave as an excuse for terminating plaintiff's employment.

48. Plaintiff believes, and on that basis alleges, that his disability and the need to accommodate his disability were substantial motivating factors in defendants' termination of his employment.

49. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

50. As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

51. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

52. Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, fraudulent manner, entitling plaintiff to punitive damages against defendants.

///

///

///

///

///

///

///

///

## FIFTH CAUSE OF ACTION

### (Failure to Engage in Interactive Process (Government Code § 12940(a), (i), (m), (n))—Against All Entity Defendants and Does 1 to 100, Inclusive)

53.  The allegations set forth in paragraphs 1 through 52 are re-alleged and incorporated herein by reference.

54.  At all times herein mentioned, FEHA, Government Code section 12940(a), (i), (m), and (n), was in full force and effect and was binding on defendants.  This statute requires defendants to engage in a timely, good faith interactive process to accommodate known disabled employees.

55.  Defendants wholly failed to engage in a timely, good-faith interactive process with plaintiff to accommodate his known disabilities.  Instead, defendants terminated plaintiff's employment and otherwise subjected him to adverse employment actions, in part because of his disabilities.

56.  Plaintiff believes and on that basis alleges that his disabilities were a motivating factor in defendants' termination of his employment and their decision to subject him to adverse employment actions.

57.  As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

58.  As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

59.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Plaintiff is at present unaware of the precise amounts of these expenses and fees and will seek leave of court to amend this Complaint when the amounts are fully known.

60.  Defendants' misconduct was committed intentionally, in a malicious, despicable, oppressive manner, fraudulent manner, entitling plaintiff to punitive damages

against defendants.

## SIXTH CAUSE OF ACTION

### (Violation of FEHA (Government Code § 12940(k)
### (Failure to Prevent Discrimination, Harassment,
### and Retaliation)—Against All Entity Defendants
### and Does 1 to 100, Inclusive)

61.    The allegations set forth in paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

62.    At all times herein mentioned, FEHA, Government Code section 12940(k), was in full force and effect and was binding on defendants.  This statute states that it is an unlawful employment practice in California for an employer "to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

63.    During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in intentional actions that resulted in plaintiff's being treated less favorably because of plaintiff's protected status (*e.g.*, his race, ancestry, age, disability, and/or medical leave).  During the course of plaintiff's employment, defendants failed to prevent their employees from engaging in unjustified employment practices against employees in such protected classes.  During the course of plaintiff's employment, defendants failed to prevent a pattern and practice by their employees of intentional discrimination and harassment on the bases of race, ancestry, age, disability, medical leave, and/or other protected statuses or protected activities.

64.    Plaintiff believes and on that basis alleges that his race, ancestry, age, disability, medical leave, and/or other protected status and/or protected activity were substantial motivating factors in defendants' employees' discrimination and retaliation against him.

65.    As a proximate result of defendants' willful, knowing, and intentional misconduct, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

PLAINTIFF'S COMPLAINT FOR DAMAGES

66.  As a proximate result of defendants' willful, knowing, and intentional miscon-duct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

67.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reason-able attorneys' fees and costs (including expert costs) in an amount according to proof.

68.  Defendants' misconduct was committed intentionally, in a malicious, despica-ble, oppressive manner, fraudulent manner, entitling plaintiff to punitive damages against defendants.

### SEVENTH CAUSE OF ACTION

#### (Violations of Labor Code § 1102.5, *et seq.*—Against All
#### Entity Defendants and Does 1 to 100, Inclusive)

69.  The allegations set forth in paragraphs 1 through 68 are re-alleged and incorpo-rated herein by reference.

70.  At all relevant times, Labor Code section 1102.5 was in effect and was binding on defendants.  This statute prohibits defendants from retaliating against any employee, including plaintiff, for raising complaints of illegality and/or belief that the employee may disclose illegality.

71.  Plaintiff raised complaints of illegality while he worked for defendants and was believed to be willing to raise complaints, and defendants retaliated against him by discriminating against him, harassing him, and taking adverse employment actions, including employment termination, against him.

72.  As a proximate result of defendants' willful, knowing, and intentional viola-tions of Labor Code section 1102.5, plaintiff has suffered and continues to suffer humili-ation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

///

73. As a result of defendants' adverse employment actions against plaintiff, plaintiff has suffered general and special damages in sums according to proof.

74. Defendants' misconduct was committed intentionally, in a malicious, oppressive manner, and fraudulent manner entitling plaintiff to punitive damages against defendants.

## EIGHTH CAUSE OF ACTION

### (Wrongful Termination of Employment in Violation of Public Policy (Labor Code § 1102.5; FEHA, the Right to Self Defense, and Government Code § 12900, *et seq.*)— Against All Entity Defendants and Does 1 to 100, Inclusive)

75. The allegations set forth in paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

76. Defendants terminated plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws. Specifically, plaintiff's employment was terminated in part because of his protected status (*e.g.*, race, ancestry, age, disability, medical leave, and/or good faith complaints), his defense of himself during the commission of a crime, and his participation in protected activities, such as his involvement with, and testimony given on behalf of, his former manager, Robert Leggins, in his case against Rite Aid. These actions were in violation of FEHA, the California Constitution, including Article 1, section 1, section 50 of the California Code, California Labor Code section 1102.5, and 2 California Code of Regulations section 11021.

77. As a proximate result of defendants' wrongful termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

///

78.  As a result of defendants' wrongful termination of his employment, plaintiff has suffered general and special damages in sums according to proof.

79.  Defendants' wrongful termination of plaintiff's employment was done intentionally, in a malicious, fraudulent, oppressive manner, entitling plaintiff to punitive damages.

80.  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq., plaintiff* is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

## NINTH CAUSE OF ACTION

### (Breach of Express Oral Contract Not to Terminate Employment Without Good Cause)—Against All Entity Defendants and Does 1 to 100, Inclusive)

81.  The allegations set forth in paragraphs 1 through 80 are re-alleged and incorporated herein by reference.

82.  Defendants, through their agents, entered an oral agreement not to terminate plaintiff's employment except for good cause.  Plaintiff and defendants, through their supervisors, made mutual promises of consideration pursuant to this oral agreement. Plaintiff performed all duties required of him under the agreement by performing his job in an exemplary manner.

83.  Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the express oral contract they had with him.

84.  As a proximate result of defendants' willful breach of the express oral contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

///

///

///

PLAINTIFF'S COMPLAINT FOR DAMAGES

## TENTH CAUSE OF ACTION

### (Breach of Implied-in-Fact Contract Not to
### Terminate Employment Without Good Cause
### (*Marketing West, Inc. v. Sanyo Fisher* (1992) 6
### Cal.App.4th 603; Civil Code § 1622)—Against All
### Entity Defendants and Does 1 to 100, Inclusive)

85.   The allegations set forth in paragraphs 1 through 84 are re-alleged and incorporated herein by reference.

86.   On the basis of oral assurances of continued employment given to plaintiff by defendants' supervisors, the length of plaintiff's employment with defendants, defendants' actual practice of terminating employment only for cause, and the industry standard for the business defendants engaged in of terminating employment only for cause, plaintiff and defendants shared the actual understanding that plaintiff's employment could and would be terminated only for cause.  This shared understanding resulted in an implied contract requiring that defendants have good cause to terminate plaintiff's employment.

87.   Defendants and their managers and supervisors terminated plaintiff's employment without good cause, violating the implied-in-fact contract they had with him.

88.   As a proximate result of defendants' willful breach of the implied-in-fact contract not to terminate employment without good cause, plaintiff has suffered and continues to suffer damages, including losses of earnings and benefits, in a sum according to proof.

89.   Plaintiff seeks attorneys' fees for lost wages under this cause of action under Labor Code section 218.6.

///

///

///

///

PLAINTIFF'S COMPLAINT FOR DAMAGES

## ELEVENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress—Against

### All Defendants and Does 1 to 100, Inclusive)

90.  The allegations set forth in paragraphs 1 through 89 are re-alleged and incorporated herein by reference.

91.  Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted severe and outrageous misconduct and caused plaintiff extreme emotional distress.

92.  Defendants were aware that treating plaintiff in the manner alleged above, including depriving him of his livelihood, would devastate plaintiff and cause him extreme hardship. However, the aforementioned is made worse by the fact that defendants did so while plaintiff was suffering from an actual, perceived, and/or history of disability.

93.  As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

94.  As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

95.  Defendants' misconduct was committed intentionally, in a malicious, oppressive manner, fraudulent manner, entitling plaintiff to punitive damages.

## TWELFTH CAUSE OF ACTION

### (Failure to Provide Meal Breaks—Against

### All Entity Defendants, Rocha, Shahdaryan,

### and Does 1 to 100, Inclusive)

96.  The allegations set forth in paragraphs 1 through 95 are re-alleged and incorporated herein by reference.

97.  As described above, Rocha and Shahdaryan are managing agents.

98.  Plaintiff alleges that, within four years prior to filing of this action, pursuant to the provisions of Labor Code sections 226.7 and 215 and the applicable Industrial Welfare Commission Order, defendants and each of them were required to provide each of their employees with an uninterrupted meal period of not less than 30 minutes, during which the employees were to be totally relieved of all duties.  Such meal periods are required to be provided for each five-hour period worked and taken before the end of the fifth hour, and a second meal period of no less than 30 minutes for employees who work more than 12 hours per day must be taken before the end of the tenth hour.  Plaintiff alleges that defendants violated the Labor Code and Industrial Welfare Commission Order and failed to provide plaintiff with proper meal periods and/or that, if meal periods were provided, plaintiff was not completely relieved of all duties, and therefore they did not constitute proper meal periods at all.

99.  Pursuant to the provisions of Labor Code section 226.7, plaintiff is entitled to a full one hour of compensation at his regular rate of pay for each mandatory meal period not provided as proven at the time of trial.

### THIRTEENTH CAUSE OF ACTION

### (Failure to Provide Rest Breaks—Against

### All Entity Defendants, Rocha, Shahdaryan,

### and Does 1 to 100, Inclusive)

100.  The allegations set forth in paragraphs 1 through 99 are re-alleged and incorporated herein by reference.

101.  Plaintiff alleges that, within four years prior to filing of this action, pursuant to the provisions of Labor Code section 226.7 and the applicable Industrial Welfare Commission Order, defendants were required to provide plaintiff with ten-minute, paid rest periods during which plaintiff was to be totally relieved of all duties.  Such rest periods are required to be provided for each four-hour period or major fraction thereof

worked in a single day.

102.   Plaintiff alleges that defendants violated Labor Code and the Industrial Welfare Commission Order by failing to provide plaintiff with proper rest periods and/or that, if rest periods were provided, plaintiff was not completely relieved of all duties, and therefore they did not constitute proper rest periods at all.

103.   Pursuant to the provisions of Labor Code section 226.7, plaintiff is entitled to one hour of compensation at his regular rate of pay for each mandatory rest period not provided as proven at the time of trial.

## FOURTEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress—Against All

### Defendants and Does 1 to 100, Inclusive)

104.   The allegations set forth in paragraphs 1 through 103 are re-alleged and incorporated herein by reference.

105.   Defendants' above described conduct, which includes discriminatory, harassing, and retaliatory actions; violations of the labor code; and wrongful termination against plaintiff constituted severe and outrageous misconduct and caused plaintiff extreme emotional distress.

106.   Defendants were aware that treating plaintiff in the manner alleged above, including depriving plaintiff of his livelihood while he was suffering from an actual, perceived, and/or history of disability, and depriving the plaintiff of his livelihood by terminating him would devastate plaintiff and cause plaintiff extreme hardship.

107.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress. Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

108.   As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and

physical pain and anguish, all to his damage in a sum according to proof.

109. Defendants' misconduct was committed intentionally, in a malicious, oppressive manner, entitling plaintiff to punitive damages

**PRAYER**

WHEREFORE, plaintiff, Victor Garcia, prays for judgment against defendants as follows:

1. For general and special damages according to proof;

2. For exemplary damages according to proof;

3. For pre-judgment and post-judgment interest on all damages awarded;

4. For reasonable attorneys' fees;

5. For costs of suit incurred;

6. For such other and further relief as the Court may deem just and proper.

ADDITIONALLY, plaintiff, Victor Garcia, demands trial of this matter by jury. The amount demanded exceeds $25,000.00 (Government Code § 72055).

Dated: February 13, 2017        SHEGERIAN & ASSOCIATES, INC.

By: _____
     Carney R. Shegerian, Esq.

Attorneys for Plaintiff,
VICTOR GARCIA

PLAINTIFF'S COMPLAINT FOR DAMAGES